```
                    UNITED STATES DISTRICT COURT
                             FOR THE
                       DISTRICT OF VERMONT
```

UNITED STATES OF AMERICA,       :
                                :
        v.                      :       Case no. 2:10-cr-47
                                :
SHAWN SIMARD,                   :
                                :
        Defendant.              :

### OPINION and ORDER

Defendant Shawn Simard has pled guilty to one count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). Because Simard's prior conviction of Lewd or Lascivious Conduct with a Child, Vt. Stat. Ann. Tit. 13 § 2602, is a qualifying predicate offense, he is exposed to a ten-year minimum mandatory sentence under § 2252(a)(4)(B). *See* Mem. and Order 15, Sept. 1, 2011, ECF No. 61.

Simard's instant motion argues that the application of the ten-year mandatory minimum is unconstitutional under the Eighth Amendment because this mandatory enhancement precludes the sentencing court from considering his youth when the predicate offense was committed. Simard grounds his argument in dicta from a recent Supreme Court decision which he argues suggests that a sentencing court must consider a defendant's youth in sentencing. *See Graham v. Florida*, 130 S. Ct. 2011 (2010). Simard is making both a "categorical" and an as-applied constitutional challenge. Def.'s Mot. to Strike 1, ECF No. 66.

I.   Background

On November 2, 2004, Simard pled guilty to one count of Lewd or Lascivious Conduct with a Child in violation of Vt. Stat. Ann. Tit. 13 § 2602.  That offense occurred in the summer of 2003 when he was 17 years old.  Despite his age, Simard was tried in state court as an adult under Vermont law. He was an eighteen-year-old adult at the time he pled to the charge. Resp. in Opp'n to Def.'s Mot. to Strike 1, ECF No. 67.  Simard received a three-year deferred sentence, but he violated the terms and conditions of his probation within a year.  After he admitted to the violation, the court modified the sentence to impose a term of imprisonment of two-to-five years, all suspended.  Less than a month later, he again violated the terms and conditions of his probation.  On February 10, 2006, the court reimposed his suspended sentence of two-to-five years, but modified the sentence to require him to serve 18 months in custody.  *Id.* at 1-2.

Simard was released from custody on or before May 7, 2007, and placed on probation, terms of which required he participate in sex offender treatment.  During a group counseling session on January 14, 2009, Simard admitted that he had been viewing pornographic material on his computer.  Two Community Corrections Officers went with him to his residence and searched his computer.  The investigation revealed a video containing

graphic images of child pornography.  Simard was 22 years old when the Community Corrections Officers discovered the video. *Id.* at 2.

On March 25, 2010, a federal grand jury returned an Indictment charging Simard with one count of receipt of child pornography under 18 U.S.C. § 2252(a)(2), and one count of possession of child pornography under 18 U.S.C. § 2252(a)(4)(B). The Indictment further included in each count that he had been convicted of Lewd or Lascivious Conduct with a Child, Vt. Stat. Ann. Tit. 13 § 2602, on November 2, 2004.

Simard agreed to plead guilty to the possession count under the parties' plea agreement.  The parties agreed that his prior conviction for Lewd or Lascivious Conduct with a Child would subject him to an enhanced penalty of a ten-year mandatory minimum sentence with a statutory maximum sentence of twenty years pursuant to 18 U.S.C. § 2252(b)(2).  *Id.*

At the change of plea hearing on May 12, 2011, this Court requested additional briefing on the question whether Simard's previous conviction under Vermont law qualified as a predicate offense.  Tr. of Hr'g 4-5, ECF No. 43.  This Court ruled that his 2004 state conviction did qualify as a predicate offense under § 2252(b)(2), thus exposing him to the ten-year mandatory minimum sentence. Mem. and Order 15.  Simard subsequently filed the present motion on October 14, 2011.

II. Discussion

As a threshold matter, Simard's challenge is ripe for adjudication even though he has not yet pled guilty to any of the charges before him. *See United States v. Santana*, 761 F. Supp. 2d 131, 141-42 (S.D.N.Y. 2011) (holding that the question of the applicability of the Fair Sentencing Act (FSA) to a defendant is ripe where the defendant represents that "he will plead guilty if the Court declares the FSA applicable in his case").

*A. The Categorical Challenge*

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. "The Cruel and Unusual Punishments Clause prohibits the imposition of inherently barbaric punishments under all circumstances." *Graham*, 130 S. Ct. at 2021 (citing *Hope v. Pelzer,* 536 U.S. 730 (2002). "For the most part, however, the Court's precedents consider punishments challenged not as inherently barbaric but as disproportionate to the crime. The concept of proportionality is central to the Eighth Amendment." *Id.*

Categorical challenges to sentencing practices under the Eighth Amendment attempt to use "categorical rules to define Eighth Amendment standards." *Id.* at 2022. In *Graham*, the

4

Supreme Court restated the framework for assessing categorical challenges to sentencing practices:

> The Court first considers "objective indicia of society's standards, as expressed in legislative enactments and state practice" to determine whether there is a national consensus against the sentencing practice at issue. Next, guided by "the standards elaborated by controlling precedents and by the Court's own understanding and interpretation of the Eighth Amendment's text, history, meaning, and purpose," the Court must determine in the exercise of its own independent judgment whether the punishment in question violates the Constitution.

*Id.* (internal citations omitted).

Simard applies the categorical challenge framework above in order to make his argument that the application of the ten-year mandatory minimum is unconstitutional under the Eighth Amendment because this mandatory enhancement precludes the sentencing court from considering the youth of the defendant when the predicate offense was committed. *See* Def.'s Mot. to Strike 4-11. He first argues there is "[a] national consensus that juveniles are less deserving of the most severe forms of punishment, and consequently, youth must be taken into account during sentencing." *Id.* at 4-7. Simard proceeds to argue that "[j]uvenile offenders—especially those that receive non-incarcerative sentences—are categorically less deserving of mandatory minimum sentences and the application of mandatory minimum sentences to this category of offenders is not supported by legitimate penological goals." *Id.* at 7-11.

5

Simard's categorical challenge is unpersuasive. First, he mischaracterizes the holding of *Graham v. Florida*. In *Graham*, the defendant was arrested for attempted armed robbery when he was 16 years old. *Graham*, 130 S. Ct. at 2018. The trial court accepted a plea agreement, withheld adjudication of guilt, and sentenced the defendant to concurrent 3-year terms of probation. Less than six months later, the defendant was arrested again for two alleged home invasion robberies committed on the same night, among other offenses. *Id.* at 2018-19. The defendant was approximately one month short of his 18th birthday on the night of the robberies. The court found that the defendant had violated his probation by attempting to avoid arrest, committing a home invasion robbery, possessing a firearm, and by associating with people engaged in criminal activity, and found the defendant ultimately guilty of the earlier armed burglary and attempted armed robbery charges. *Id.* at 2019-20. Under Florida law, the defendant was facing a minimum of five years imprisonment and a maximum of life imprisonment, absent a downward departure. Imposing a penalty higher than that recommended by the government and the Florida Department of Corrections, the judge sentenced the defendant to life imprisonment without the possibility of parole. *Id.* at 2020. Graham then challenged his sentence under the Eighth Amendment,

and after denial by the Florida courts, the Supreme Court granted certiorari. *Id.*

The Supreme Court applied the categorical challenge framework to the defendant's claim. The Court's analysis of "objective indicia of national consensus" focused solely on juveniles sentenced to life imprisonment without parole. *Id.* at 2023-26. The Court then proceeded to analyze "community consensus," affirming the notion that "because juveniles have lessened culpability they are less deserving of the most severe punishments."[1] *Id.* at 2026 (citing *Roper v. Simmons*, 543 U.S. 551, 569 (2005). Finally, the Court discussed penological justifications for the sentencing practice, ultimately

---

[1] The Court elaborates on the lessened culpability of juveniles:

> As compared to adults, juveniles have a lack of maturity and an underdeveloped sense of responsibility; they are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure; and their characters are not as well formed. These salient characteristics mean that it is difficult even for expert psychologists to differentiate between the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption. Accordingly, juvenile offenders cannot with reliability be classified among the worst offenders. A juvenile is not absolved of responsibility for his actions, but his transgression is not as morally reprehensible as that of an adult.

*Graham*, 130 S. Ct. at 2026 (internal citations and punctuation omitted). Simard's subsequent arrest as an adult may suggest that his crimes do not reflect an "unfortunate yet transient immaturity." *Id.*

7

concluding that "penological theory is not adequate to justify life without parole for juvenile nonhomicide offenders." *Id.* at 2030.

In light of the above considerations, the Court announced its ruling:

> This Court now holds that for a juvenile offender who did not commit homicide the Eighth Amendment forbids the sentence of life without parole. This clear line is necessary to prevent the possibility that life without parole sentences will be imposed on juvenile nonhomicide offenders who are not sufficiently culpable to merit that punishment. Because the age of 18 is the point where society draws the line for many purposes between childhood and adulthood, those who were below that age when the offense was committed may not be sentenced to life without parole for a nonhomicide crime.

*Id.* Although he joined Justice Thomas's dissent, Justice Alito wrote separately to emphasize that the majority's holding was narrow. *Graham*, 130 S.Ct. at 2058 (Alito, J., dissenting) ("*First,* the Court holds only that 'for a juvenile offender who did not commit homicide the Eighth Amendment forbids the sentence of *life without parole*.' *Ante,* at 2030 (emphasis added). Nothing in the Court's opinion affects the imposition of a sentence to a term of years without the possibility of parole. Indeed, petitioner conceded at oral argument that a sentence of as much as 40 years without the possibility of parole 'probably' would be constitutional."). The Court elaborated on the holding:

> A State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime. What the State must do, however, is give defendants like Graham some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation. It is for the State, in the first instance, to explore the means and mechanisms for compliance. It bears emphasis, however, that while the Eighth Amendment forbids a State from imposing a life without parole sentence on a juvenile nonhomicide offender, it does not require the State to release that offender during his natural life. Those who commit truly horrifying crimes as juveniles may turn out to be irredeemable, and thus deserving of incarceration for the duration of their lives. The Eighth Amendment does not foreclose the possibility that persons convicted of nonhomicide crimes committed before adulthood will remain behind bars for life. *It does forbid States from making the judgment at the outset that those offenders never will be fit to reenter society.*

*Id.* at 2030 (emphasis added).

From the holding and reasoning in *Graham*, it does not follow that a sentencing court must consider a defendant's youth in committing a predicate offense for enhancement pursuant to an adult conviction.[2] The facts in *Graham* are simply not analogous

---

[2] The government cites to case law where courts entertained challenges similar to Simard's present motion. Resp. in Opp'n to Mot. to Strike 6-7 ("[T]here is a clear consensus that enhancing the sentenced of recidivist offenders whose prior convictions occurred as juveniles is acceptable and appropriate."). This "consensus" is not as broad as the government claims, but cases such as *United States v. Scott*, 610 F.3d 1009, 1018 (8th Cir. 2010) *cert. denied*, 131 S. Ct. 964 (2011) (upholding under the Eighth Amendment the use of a defendant's two prior juvenile felony drug offenses, for which defendant was tried and convicted as an adult, as prior felony offenses for enhancement purposes under 21 U.S.C. § 841), and *United States v. Graham*, 622 F.3d 445, 463-64 (6th Cir. 2010) *cert. denied*, 131 S. Ct. 2962 (2011) (upholding under the Eighth

9

to the factual basis underlying Simard's categorical challenge. Further, the category of defendants at issue are adults facing sentencing—for example, Simard committed his present offense conduct at age 22 and was indicted at age 23. From the heart of Simard's argument—that evolving standards of decency demand that sentencing courts take youthfulness into account during sentencing—it does not follow that a sentencing court must take a defendant's youth during a predicate offense into consideration when sentencing an adult. This categorical challenge is not analogous to the state failing to offer a juvenile "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Id.* at 2030. This Court will not re-characterize the narrow holding of *Graham* so that it would apply to a wholly inapposite category of defendants.

Furthermore, Simard's argument falls short because there is no evidence to suggest that a defendant's youth will not be taken into account during sentencing. Similarly-situated

---

Amendment the use of a defendant's prior drug offense, where he committed the offense conduct as a juvenile but was sentenced as an adult, as a predicate offense for purposes of imposing a mandatory life sentence), do stand for the proposition that the use of juvenile court adjudication can properly be used to enhance adult convictions. However, these cases were decided before *Graham*. On the other hand, Simard cites no case law bolstering his argument outside of dicta from *Graham*, much of which is taken out of the context of discussing nonhomicide juvenile offenders sentenced to life without parole.

defendants are subject to a mandatory minimum of ten years, but the fact that a defendant's offense conduct involving predicate offenses might have occurred during their youth can still be reflected in the sentencing. As a result, a sentencing judge may not impose a sentence of less than ten years, but may impose a sentence of less than the maximum 20 year penalty because of a defendant's youthfulness during the predicate offense. *See* 18 U.S.C. § 2252 (b)(2) (providing that a defendant with a qualifying predicate offense shall be imprisoned "for not less than 10 years nor more than 20 years"). Simard's contention that the statutory scheme precludes the sentencing judge from considering youth is unsupported. Congress has simply restricted the range of sentences the judge may impose. *See, e.g., United States v. Wimbley*, 553 F.3d 455, 462-63 (6th Cir. 2009) *cert. denied*, 129 S. Ct. 2414 (2009) ("[T]here is no doubt that Congress has authority to limit judicial discretion, or even eliminate it altogether, by imposing mandatory minimum sentences.").

For the above reasons, this Court **denies** the categorical challenge.

### B. *The As-Applied Challenge*

Simard additionally makes an as-applied challenge under the Eighth Amendment. Justice Kennedy's controlling opinion in *Hamerlin v. Michigan*, 501 U.S. 957, 997-1001 (1991), provides a

"narrow proportionality principle" which "forbids only extreme sentences that are grossly disproportionate to the crime" in noncapital cases. Only in "exceedingly rare" circumstances will a sentence for a term of years violate the Eighth Amendment's prohibition of cruel and unusual punishments. *Ewing v. California*, 538 U.S. 11, 22 (2003) (plurality opinion).

To determine whether a particular sentence violates the proportionality principle, the Supreme Court has begun its inquiry by determining whether there is a "reasonable basis" for believing that the enhanced sentence "advances the goals of [the] criminal justice system in some way." *Id.* at 28 (citing *Solem v. Helm*, 463 U.S. 277, 297 n. 22 (1983)). The Court then addresses "the gravity of the offense compared to the harshness of the penalty." *Id.* In weighing the gravity of the offense, courts must consider not only the defendant's present felony, but the defendant's history of crime. *Id.* at 29.

Congress intends that violators of 18 U.S.C. § 2251 *et seq.* receive severe punishments:

> The Government . . . has a compelling interest in ensuring that the criminal prohibitions against child pornography remain enforceable and effective. The most expeditious if not the only practical method of law enforcement may be to dry up the market for this material by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product.

PROTECT Act, Pub. L No. 108-21, Title V, Subtitle A, § 501(2), 117 Stat. 676 (2003). Congress found that "[t]he prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance, and this interest extends to stamping out the vice of child pornography at all levels in the distribution chain." *Id.* In light of the seriousness of the threat, Congress could reasonably justify the statutory penological arrangement under § 2252(b)(2) for offenders of child pornography laws who have previously been convicted of specific forms of sexual exploitation of children. *See, e.g., Ewing*, 538 U.S. at 28 (explaining that the legislature "has primary responsibility for making the difficult policy choices that underlie any criminal sentencing scheme. [Courts] do not sit as a 'superlegislature' to second-guess these policy choices"). There is a reasonable basis for concluding that the sentencing scheme under § 2252(b)(2) advances the goals of the criminal justice system.

Furthermore, taking into account Simard's history of crime relating to the sexual exploitation of children, the gravity of this offense is not grossly disproportionate to the harshness of the penalty. Simard's primary argument is that he is "vastly" less culpable than similar offenders whose predicate offense was committed as an adult, and thus the punishment is impermissibly disproportionate. Taking his argument at face value, this is

clearly not the "exceedingly rare" circumstance where a court could hold that a sentence for a term of years violates the proportionality rule. *Ewing,* 538 U.S. at 22. The government's recitation of the Supreme Court's proportionality cases demonstrates that Simard's case does not even come close to approaching the "grossly disproportionate" standard. Resp. in Opp'n to Mot. to Strike 12-14. The Supreme Court has sustained an Eighth Amendment challenge to a sentence for a term of years based on the proportionality principle only once in the past 25 years, and that case involved a sentencing judge's discretion as opposed to the imposition of a mandatory minimum sentence established by Congress.[3] *Solem v. Helm*, 463 U.S. 277 (1983) (holding unconstitutional a mandatory life sentence without parole imposed on a defendant who committed his seventh nonviolent felony by writing a "no-account" check for $100). The Court has approved a mandatory life sentence for a defendant who committed three separate low-level theft offenses totaling approximately $230. *Rummel v. Estelle*, 445 U.S. 263, 265-66 (1980). The Court has approved a sentence of 25 years to life under California's three-strikes law for a defendant whose third

---

[3] *See* Resp. in Opp'n to Mot. to Strike 12, *see also* Rachel E. Barkow, The Court of Life and Death: The Two Tracks of Constitutional Sentencing Law and the Case for Uniformity, 107 Mich. L. Rev. 1145, 1160 (2009) (descrbing *Solem v. Helm* as the "single case in the Court's history in which a term of incarceration, standing alone, was held to be disproportionate to an otherwise validly defined crime").

14

offense consisted of stealing golf clubs worth $1,200. *Ewing*, 538 U.S. at 18. In light of Congress' belief that child pornography is an exceedingly serious crime, a mandatory 10-year sentence for a recidivist offender who committed the predicate offense as a juvenile is simply not "the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Hamerlin*, 501 U.S. at 1005 (Kennedy, J., concurring in part and concurring in judgment).

For the above reasons, this Court **denies** the as-applied challenge.

Dated at Burlington, in the District of Vermont, this 13th day of December, 2011.

/s/ William K. Sessions III
William K. Sessions III
U.S. District Court Judge